# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CHARLES STOKES,** | |
| Plaintiff, | |
| v. | Case No. 16 C 10621 |
| **P.O. EWING #8653, P.O. ORTIZ #9748,** and the **CITY OF CHICAGO,** a Municipal Corporation, | Judge Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Chicago's Motion to Dismiss Plaintiff's *Monell* claim [ECF No. 16]. For the reasons stated herein, the Motion is denied.

### I. BACKGROUND

Plaintiff Charles Stokes ("Stokes") filed this lawsuit under 42 U.S.C. §§ 1983 and 1988 to address alleged constitutional violations visited upon him by Chicago Police Officers Ewing and Ortiz (the "Defendant Officers"). The following facts are drawn from Stokes' Complaint and are, for purposes of this Motion, accepted as true, with all inferences drawn in his favor. *See, e.g., Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2015).

On September 2, 2015, Stokes was leaving the home of his mother-in-law when Defendant Officers searched his car without cause and falsely arrested him for possessing a firearm. (ECF No. 1 ("Compl.") ¶¶ 5-10.) Stokes claims that they and Defendant City of Chicago (the "City") proceeded with baseless charges, which were ultimately resolved in his favor. (*Id.* ¶¶ 14-17.) On November 21, 2015, Stokes was again leaving his mother-in-law's home when Defendant Officers stopped him without cause. (*Id.*, Count III, ¶¶ 5-7.) They searched his person, took his car keys, and then searched his car. (*Id.*, Count III, ¶¶ 9-10.) Despite finding nothing in his car, Defendant Officers claimed they had discovered "some weed/marijuana somewhere near the house," and subsequently arrested Stokes. (*Id.*, Count III, ¶¶ 11-12.)

After arresting Stokes, Defendant Officers informed him and a co-arrestee that they were going to jail for narcotics possession "unless they came up with a gun." (Compl., Count VI, ¶ 13.) Both Stokes and his companion-in-misfortune told Defendant Officers that they did not have or own a gun. (*Id.*, Count VI, ¶ 14.) At that point, "[o]ne or both" of Defendant Officers told them that they could only avoid jail by furnishing the police with a gun. (*Id.*, Count VI, ¶ 15.) Because neither of them had a gun, Stokes' co-arrestee "arranged to obtain a

gun." (*Id.*, Count VI, ¶¶ 16-17.) Once "a gun was tendered" to Defendant Officers, Stokes was released and requested that the other individual be released as well. (*Id.*, Count VI, ¶¶ 18-19.) Defendant Officers replied that Stokes' co-arrestee would be released only if Stokes found them another gun. (*Id.*) Because he did not have a gun, "Stokes was ordered to hit the streets and obtain or buy an illegal gun and turn it over." (*Id.*, Count VI, ¶¶ 20-22.) Both were released once this second gun was found and presented to Defendant Officers. (*Id.*, Count VI, ¶ 27.)

With respect to the City, Stokes alleges that both Defendant Officers were acting within the scope of their employment and pursuant to "a custom practice and policy to arrest people on false charges and then in turn, have them conduct illegal felonious acts for the Chicago Police." (Compl., Count VI, ¶¶ 22-23.) This "unwritten practice, customs *[sic]* and policy was done to keep a point/score for police officers in certain districts and reward officers accordingly for bringing in illegal guns off the street(s)." (*Id.*, Count VI, ¶ 24.) Ultimately, Stokes attributes his false arrest to this "custom, practice and policy," which "promoted illegal arrests of innocent individuals." (*Id.*, Count VI, ¶¶ 25-26.)

The City now seeks to dismiss Stokes' *Monell* claim under FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief can be granted.

## II. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must state a claim that is plausible on its face." *Adams,* 742 F.3d at 728 (quoting *Bell Atl. Corp. v. Twombly,,* 550 U.S. 544, 570 (2007)). A claim enjoys "facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Adams,* 742 F.3d at 728 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A plaintiff must allege that all elements of his claim are satisfied, but cannot survive a Rule 12(b)(6) motion to dismiss by alleging only legal conclusions. *Reynolds v. CB Sports Bar, Inc.,* 623 F.3d 1143, 1147 (7th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Specific to *Monell* claims for municipal liability, the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau,* 506 F.3d 509, 514 (7th Cir. 2008) (internal quotation

marks omitted); *accord, Teesdale v. City of Chicago,* 690 F.3d 829, 833 (7th Cir. 2012). To state such a claim, the plaintiff must allege that: (1) he suffered a deprivation of a federal right (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the city, which (3) was the proximate cause of his injury. *See, Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690-91 (1978); *accord, Gonzalez v. Vill. of West Milwaukee,* 671 F.3d 649, 664 (7th Cir. 2012). The plaintiff must also plausibly point to the existence of an underlying constitutional violation. *Houskins v. Sheahan,* 549 F.3d 480, 493-94 (7th Cir. 2008).

### III. **ANALYSIS**

In essence, Stokes is suing the City for instituting an implicit policy, custom, or practice that rewards officers in proportion to the number of guns confiscated and licenses the arrest of individuals on false charges unless they can obtain and turn over a gun. (ECF No. 23 ("Pl.'s Br.) at 3-4.) This policy, as applied to him, allegedly violated his rights under the Fourth and Fourteenth Amendments. (Compl. ¶ 28.)

The City contends that Stokes' Complaint fatally lacks the requisite specificity to allege a plausible *Monell* claim. Conclusory and boilerplate allegations, the City points out,

leave a complaint stranded. Further, the City argues that Stokes has not provided facts permitting an inference that the alleged policy was the driving force behind his injury – "that a widespread reward system directed or even influenced the Defendant Officers' actions" – or that the City was deliberately indifferent to the effects of its policy. (ECF No. 24 ("Reply") at 5-6.) In addition, the City maintains that the Complaint fails to elevate what happened to Stokes and his co-arrestee above a "random event," because it does not identify other instances of the conduct claimed to be "widespread." (*Id.* at 3-4.) (The City does not claim that Stokes fails to allege an underlying constitutional violation.) Stokes, on the other hand, warns against applying a heightened pleading standard to *Monell* claims and notes that his Complaint sufficiently puts the City on notice of the factual basis for his suit.

Three of the City's arguments can be quickly put to the sword. First, the Complaint does not make merely conclusory or boilerplate allegations, but instead pleads specific factual content sufficient to put the City on notice. Rather than reciting by rote the elements of a *Monell* cause of action, Stokes' Complaint details both the nature of the alleged unconstitutional policy and the circumstances of its application to him and his co-arrestee. *Cf., e.g., Brooks v. Ross,* 578 F.3d

574, 582 (7th Cir. 2009) (holding that a "formulaic recitation of the cause of action and nothing more" fails to "put the defendants on notice of what exactly they might have done to violate [the plaintiff's] rights"); *Annan v. Village of Romeoville,* No. 12 C 3577, 2013 WL 673484, at *6 (N.D. Ill. Feb. 25, 2013) (finding allegations conclusory where they alleged only that the municipality was liable under *Monell* for officers' excessive force because it "maintain[ed] a policy by which officers use excessive force to arrest individuals with no probable cause or reasonable suspicion warranting such"); *Travis v. City of Chicago,* No. 10 C 3011, 2012 WL 2565826, at *5 (N.D. Ill. June 29, 2012) ("The court thus disregards the allegations of 'customs or policies of deliberate indifference' and 'inadequate supervision and training,' as this is mere boilerplate *Monell* language."); *Sheppard v. Village of Glendale Heights,* No. 11 C 1044, 2011 WL 6102012, at *4 (N.D. Ill. Dec. 5, 2011) (finding allegations insufficient boilerplate where they claimed sex and race discrimination "pursuant to a wide-spread practice at the Village of Glendale Heights which was so permanent and well-settled as to constitute custom or practice"). Regardless of Stokes' prospects for success, his Complaint is not so replete with boilerplate or short on unique

facts that the City can be said to lack notice of its alleged unconstitutional conduct.

Second, Stokes sufficiently pleads facts that, when viewed in the light most favorable to him, make it plausible that the challenged policy was the "driving force" behind his injury. It is a clear enough inference to draw at this stage that, absent the City's policy, Stokes and his co-arrestee would not have been forced to choose between procuring guns off the streets and getting "arrested on false charges." (Compl. ¶¶ 22, 25.) Rather than positing misconduct divorced from any specific City policy or supported only by generic *Monell* language, Stokes' Complaint links the alleged policy to an unambiguous incentive for Defendant Officers to engage in precisely the sort of egregious acts with which he charges them. Taken together with the Complaint's further allegations as to Defendant Officers – for example, that they released Stokes and his co-arrestee once two guns were tendered – Stokes' story "holds together." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). There is no good reason to flunk the Complaint based on the "driving force" requirement.

Third, the Complaint need not plead facts concerning "deliberate indifference." Contrary to the City's facile assertion, "deliberate indifference" is not an absolute pleading

requirement for *Monell* claims. Rather, the Seventh Circuit has typically regarded it as an *alternative* to an implicit policy of the sort alleged here. *See, e.g., Thomas v. Cook County Sheriff's Dept.,* 604 F.3d 293, 303 (7th Cir. 2010) ("[T]he plaintiff must demonstrate that there is a policy at issue rather than a random event. This may take the form of an implicit policy or a gap in expressed policies, or 'a series of violations to lay the premise of deliberate indifference.'") (quotation and internal citations omitted). This jibes with the treatment of "deliberate indifference" in other situations, such as claims of inadequate police training. *See, e.g., Connick v. Thompson,* 563 U.S. 51, 61 (2011) ("To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of the persons with whom the [untrained employees] come into contact.") (internal quotation marks omitted); *accord, Matthews v. City of E. St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012). Here, by contrast, Stokes charges the City with active participation in maintaining a policy that itself licenses unconstitutional conduct. As such, "deliberate indifference" is conceptually superfluous to the implicit policy alleged here, and Rule 8(a) does not require corresponding allegations in Stokes' Complaint.

The City's most substantial attack on the Complaint concerns the absence of allegations beyond those relating to Stokes (and, ostensibly, his co-arrestee). This argument merits more consideration but is ultimately rejected in view of *White v. City of Chicago,* 829 F.3d 837 (7th Cir. 2016). In *White,* the plaintiff alleged that the City's widespread practice of securing arrest warrants on the basis of conclusory complaint forms resulted in one Officer O'Donnell falsely arresting him without probable cause. The district court dismissed the *Monell* claim under Rule 12(b)(6), faulting it for being "based upon the sole allegation that O'Donnell acted in accordance with a widespread practice of the police department of the City of Chicago when seeking a warrant." *White,* 829 F.3d at 843. Brandishing *Leatherman v. Tarrant County Narcotics,* 507 U.S. 163, 164 (1993), which survives the *Twombly* line of cases intact, the Seventh Circuit rejected the district court's analysis on the grounds that federal courts may not apply a heightened pleading standard in cases alleging municipal liability under 42 U.S.C. § 1983. *Ibid.* The following allegations sufficed to satisfy the "short and plain statement of the claim" required by Rule 8(a):

> In accordance with a widespread practice of the police department of the City of Chicago: O'Donnell requested the judge to issue a warrant on the basis of

> O'Donnell's conclusory allegation that other law enforcement officers claimed or believed plaintiff had committed an offense, and O'Donnell did not present the judge with an affidavit setting out any affirmative allegation of facts that would indicate that plaintiff had committed an offense.

*Id.* at 844. White was not required to "identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process." *Ibid.* To be sure, at summary judgment, impropriety from a single incident may not give rise to liability on the sort of *Monell* claim at issue. *See, e.g., Wilson v. Cook Cnty.,* 742 F.3d 775, 780 (7th Cir. 2014). But that was not the procedural posture in *White,* and it is not the situation presented here.

Post-*White* courts analyzing *Monell* suits have scotched motions to dismiss premised on the same arguments as the City's. For example, in *Kerlin v. Chicago Board of Elections,* No. 16 C 7424, 2017 WL 1208520, (N.D. Ill. Apr. 3, 2017), the court held that *White* mandated denial of the defendants' motion to dismiss where the plaintiffs identified a specific constitutional deprivation of their right to vote on March 15, 2016 and alleged a "pervasive and widespread *de facto* policy, practice, and procedure of willfully disregarding citizens' right to vote." *Id.* at *6-7. At the pleading stage, plaintiffs "'need only plead that the alleged incident is one of many' occurring in

Chicago and 'that a widespread practice' gave rise to those incidents." *Id.* at *7 (quoting *Barwicks v. Dart,* No. 14 C 8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016)). Similarly, in *Zinn v. Village of Sauk Village,* No. 16 C 3542, 2017 WL 783001 (N.D. Ill. Mar. 1, 2017), the court applied *White* to deny a motion to dismiss where the plaintiff alleged a Fourth Amendment violation arising out of a single automobile seizure "'pursuant to [Sauk Village's] widespread practice of illegally and unconstitutionally seizing private property' and charging monetary fees for its return 'in an effort to raise money for the Village.'" *Id.* at *7 (quoting the complaint). Apart from applying *White* in relevant fashion, *Kerlin* and *Zinn* involved factual allegations plainly apposite to those at the heart of this lawsuit.

And if *White* and its progeny leave any doubt, cases of more mature vintage, such as *Jackson v. Marion County,* 66 F.3d 151 (7th Cir. 1995), should dispel it. There, the plaintiff brought a *Monell* claim arising out of two distinct policies or practices: first, a policy or custom of failing to prevent misconduct by subordinate officers; and second, a policy or custom of conspiring with officers "to cover up and/or slant the facts to achieve an outcome not consistent with the duties of said office." *Jackson v. Marion County,* 66 F.3d at 152. The

district court dismissed the complaint on the basis that "there was no explicit allegation of a custom or policy, but only an allegation of an isolated instance of misconduct." *Ibid.* The Seventh Circuit's review of the dismissal was bifurcated. With respect to the county's alleged failure to prevent misconduct, the court noted that "proof of a single act of misconduct will not suffice" when the government entity is alleged to have notice of "what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Ibid.* (citations omitted). However, when a complaint charges a municipality "with having engaged in improper conduct directly . . . [such as] made the county complicit with the officers, then the drawing of an inference from a series of bad acts by subordinate officers is not required." *Id.* at 152-53 (citations omitted). In this case, Stokes alleges the City's complicity not in failing to train, supervise, or prevent misconduct, but in establishing a widespread custom or implicit policy that licenses unconstitutional conduct. A "series of bad acts" is not required to state such a claim. *Ibid.*

Thus, Seventh Circuit precedent clearly maps the proper course here. Pursuant to *White* and *Jackson,* Stokes need not plead the factual circumstances of additional instances of

misconduct pursuant to the alleged policy. Of course, the Court does not opine on Stokes' chances on the merits, but is merely content that Stokes' Complaint adequately meets the pleading requirements of Rule 8(a). Presented with no sound basis for dismissing Stokes' *Monell* claim, the Court denies the City's Motion to Dismiss.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant City of Chicago's Motion to Dismiss Plaintiff's *Monell* Claim is denied. [ECF No. 16].

**IT IS SO ORDERED.**

					Harry D. Leinenweber, Judge
					United States District Court

Dated: May 22, 2017